■ In the Matter of the Estate of LUA G. SWEETLAND, Deceased. MARY SWEETLAND, Individually and as Executor of LUA G. SWEETLAND, Deceased, Respondent; CLINTON SWEET- LAND et al., Appellants. [710 NYS2d 668] —Crew III, J. Appeals (1) from an order of the Surrogate's Court of Tompkins County (Barrett, S.), entered February 2, 1999, which, *inter alia*, granted petitioner's motion for summary judgment dismissing objections to decedent's will, and (2) from a decree of said court, entered February 9, 1999, which admitted to probate an instru- ment purporting to be the last will and testament of decedent.

Decedent died in August 1997, survived by her six children. All of decedent's children moved away from decedent's home except petitioner, who lived with and cared for decedent until her death.

In December 1995 decedent, in the company of petitioner, went to the office of her attorney, Mahlon Perkins, in order to discuss a variety of legal matters, including rent arrears owed by tenants of decedent's farm. While at Perkins' office, decedent asked him to draft a will that would leave her entire estate to petitioner. Perkins then prepared an initial draft, which decedent reviewed and approved. Decedent then signed a final copy, which was witnessed by Perkins and his secretary.

Following decedent's death, petitioner commenced this proceeding in Surrogate's Court offering decedent's last will and testament for probate. Decedent's son, respondent Clinton Sweetland (hereinafter respondent), along with three of decedent's daughters, filed objections to probate on the grounds that the will was not duly executed, decedent was not compe- tent to make the will, and the will was the product of petition- er's fraud and undue influence. Following depositions, peti- tioner moved for summary judgment. Surrogate's Court granted the motion and admitted decedent's will to probate. This appeal ensued.[1]

Initially, respondent contends that deposition testimony of Perkins and his secretary demonstrates an issue of fact as to whether the will was properly executed. In this respect, re- spondent points to the fact that Perkins testified that his sec- retary was present while decedent read the will, whereas his

---

1. While respondents Kathleen Christopher, Ann Marie Zeddies and Grace Vavra filed a notice of appeal, they have neither filed a brief nor made a motion for an extension of time in which to do so. We therefore deem their appeal to have been abandoned.

secretary testified that she did not observe decedent read her will. Nevertheless, both Perkins and his secretary clearly testified that decedent, in their presence, declared the will to be her last will and testament, asked both of them to witness her execution of the will and then signed the will in their presence. Such clearly satisfied the requirements of EPTL 3-2.1 (a) (2). Respondent also points to the existence of staple holes at the top of the will as evidence that the will was not duly executed. Regardless of when and why staples were removed from the will (a matter of pure speculation), Perkins' testimony is clear that the will remained in his office after its execution until its offer for probate and, further, that the will in question was the will executed by decedent in his presence on December 8, 1995.

We likewise reject respondent's contention that there exists a genuine issue of fact as to decedent's competency. Respondent gave deposition testimony to the effect that his mother was "kind of childish acting, senile acting [and] [s]he couldn't remember things" and that she "[s]eemed like a five year old at times." Respondent offered virtually no factual testimony to support such conclusory assertions.[2] In contrast to respondent's conclusory assertions, Perkins, who had known decedent for more than 20 years, testified that he was with her for over two hours on the day that her will was prepared, that she was mentally alert, responsive to all of his questions and that "[s]he was as I've known her for over 20 years." Such testimony clearly justified Surrogate Court's determination as to decedent's competency.

Finally, we are of the view that respondent failed to demonstrate by way of admissible factual evidence that an issue of fact existed concerning the claim that decedent's will was the product of the fraud or undue influence of petitioner. At best, the testimony of respondent and his sisters distilled to their unsubstantiated belief that decedent could not and would not do anything without petitioner's permission and, therefore, the execution of the will must have been the result of petitioner's undue influence.

Peters, Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order and decree are affirmed, without costs.

---

**2.** It is of note that respondent had not seen his mother for a period of five years preceding her death.